***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the prior Opinion and Award. Accordingly, the Full Commission AFFIRMS with modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff's bilateral carpal tunnel syndrome is a compensable occupational disease and if so, to what indemnity and medical compensation, if any is plaintiff entitled? *Page 2 
2. Whether plaintiff's osteoarthritis in his hands is a compensable occupational disease and if so, to what indemnity and medical compensation, if any is plaintiff entitled?
 *********** DEPOSITIONS
1. The deposition of Dr. Krishna P. Bhat has been admitted into the record.
2. The deposition of Dr. Bradley J. Broussard has been admitted into the record.
3. The deposition of Dr. George S. Edwards has been admitted into the record.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 1. Stipulated Exhibit 1: Pre-Trial Agreement.
 2. Stipulated Exhibit 2: Indexed and Paginated Set of Exhibits.
 3. Stipulated Exhibit 3: Job Video.
 4. Stipulated Exhibit 4: Job Description.
 5. Stipulated Exhibit 5: Medical Records of Dr. Sanjay Garg
 6. Stipulated Exhibit 6: Payroll Records for 2006 — 2007
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The Employee is Michael W. Walters.
2. The Employer is The Goodyear Tire Rubber Co.
3. The Carrier is Liberty Mutual Insurance Group. *Page 3 
4. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. An employer and the employee relationship existed between the employer and the employee on or about 1 April 2009 (IC File No. W23368), the date of the alleged onset of occupational disease to his hands including bone spurs due to thirty (30) years of repetitive use, and on or about 19 November 2007 (IC File No. 844022), the date of the alleged onset of occupational disease to his hands with bilateral carpel tunnel syndrome and osteoarthritis due to thirty (30) years of repetitive use.
5. Defendants are entitled to a credit for all "net" AS benefits received by the employee for any period of time for which he is claiming entitlement to disability benefits. The parties further stipulate that "net" AS benefits are defined as gross AS benefits less any taxes taken out on said gross benefits.
6. Plaintiff's average weekly wage was $1,202.13, which is sufficient to generate the maximum weekly compensation rate for 2007 of $754.00, and which results in a weekly compensation rate for 2009 of $801.82.
 ***********
Based upon the foregoing Stipulations, and upon the preponderance of the evidence in view of the entire record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff, a high school graduate, began working with defendant-employer on 28 November 1977.
2. Plaintiff built tires for defendant-employer for approximately thirty-two (32) years. During this period, plaintiff was a stage 1 RLT tire builder for approximately twenty-six (26) years, a stage 1 R1 tire builder for approximately two (2) years, and a conventional tire *Page 4 
builder for approximately four (4) years. Defendant-employer provided a job description for the 1 RLT tire builder position showing the following duties and physical requirements: 1) change inner liner roll, requiring plaintiff to occasionally lift and carry thirty-five (35) pounds, lift and carry sixty to eighty (60-80) pounds, push and pull approximately fifty (50) pounds, grip bilaterally one hundred (100) pounds; 2) replace sidewall component rolls mounted on a dolly, requiring plaintiff to occasionally push and pull sixty (60) pounds, lift and carry forty (40) pounds, and grip bilaterally fifty (50) pounds; 3) position ply stock into the position and thread onto the conveyor, requiring plaintiff to occasionally push and pull sixty (60) pounds, lift five (5) pounds, and lift and carry twenty (20) pounds; 4) replace toe guard roll on the let-off, requiring plaintiff to occasionally lift and carry thirty-eight (38) pounds, lift and carry ninety (90) pounds, and grip bilaterally one hundred (100) pounds; 5) change the building drum using the hoist, requiring plaintiff to occasionally lift and carry eighty-five (85) pounds, push and pull fifty (50) pounds, and push forty (40) pounds; 6) build stage 1 carcass on a building drum and attach various components, requiring plaintiff to continually grip bilaterally fifty (50) pounds, pinch bilaterally fifteen (15) pounds, pull thirty (30) pounds, push fifty (50) pounds, and grip with preferred hand sixty (60) pounds; 7) pull the completed carcass from the building drum and place on the carcass truck, requiring plaintiff to continually pull fifty (50) pounds, lift and carry thirty (30) pounds, and grip bilaterally fifty (50) pounds; and 8) push the loader carcass truck into a pickup position, requiring plaintiff to occasionally push eighty (80) pounds.
3. Plaintiff's shift was from 7 a.m. to 7 p.m., and he worked forty-three (43) hours per week. During a twelve (12) hour shift, plaintiff built between one hundred and eighty and two hundred (180-200) tires. The components for a RLT tire are thicker, bigger, and heavier than those of a regular tire. There is a high ridge on the green tire which causes the green tire to *Page 5 
stick to the drum, which required plaintiff to use scissors and his hands to try to pry the green tire off the drum once it was built. Plaintiff also used a hot knife while building tires.
4. On 19 November 2007, plaintiff was informed that at the end of the prior shift there had been a code change and when the test tire was built, it was left on the machine because it was stuck. Plaintiff tried unsuccessfully for approximately twenty (20) minutes to get the stuck tire off his tire machine, before calling a service person who was able to remove the tire. Thereafter, plaintiff attempted to build tires for approximately forty-five (45) minutes, however he began experiencing pain, stiffness, and numbness in his hands. Plaintiff reported the incident to his supervisor and completed an Associate Report of Incident. Plaintiff returned to Goodyear Medical on 27 December 2007 due to ongoing problems with his hands.
5. Upon referral by defendant-employer, Dr. Krishna P. Bhat, a board certified physician in physical medicine and rehabilitation, examined plaintiff on 1 February 2008. Following a nerve conduction study and EMG, Dr. Bhat diagnosed plaintiff with bilateral carpal tunnel syndrome and bilateral hand osteoarthritis. Dr. Bhat recommended hand therapy and the medication Lyrica.
6. Plaintiff returned to Dr. Bhat on 29 February 2008, at which time it was noted that the hand therapy helped his wrist pain, but there was more pain along the right third, or middle digit, where it meets the palm. Dr. Bhat continued plaintiff's hand therapy and work restrictions.
7. On 27 March 2008, plaintiff returned to Dr. Bhat with some swelling in the finger joints and difficulty with making a fist with his fingers and palm. Dr. Bhat reviewed the Cross Creek Imaging x-rays done on 26 March 2008. Dr. Bhat's diagnosis was multiple joints with arthritic changes — polyarthropathy — and bilateral carpal tunnel syndrome. Dr. Bhat suggested that plaintiff have a consultation with a rheumatologist, and he consulted with Dr. Karen Schorn *Page 6 
on 5 March 2009.
8. Dr. Bradley Broussard, a board certified orthopaedic surgeon, first examined plaintiff on 25 October 2007 for complaints of numbness and tingling in both hands consistent with carpal tunnel syndrome. Dr. Broussard noted that plaintiff's right hand showed swelling of his MCP, PIP, and DIP joints, tenderness to palpation, and that his gross grip strength was weaker on the right than the left. Dr. Broussard had two different diagnoses: (1) the pain and stiffness was most likely due to the underlying arthritic condition in his hands; and (2) the bilateral numbness and tingling was due to bilateral carpal tunnel syndrome. Dr. Broussard started plaintiff on Limbrel, an anti-inflammatory medication, and scheduled him for nerve conduction studies.
9. The nerve conduction studies were consistent with sensorimotor carpal tunnel syndrome, which was graded as moderate. Plaintiff returned to Dr. Broussard on 8 November 2007, at which time he noted that the Limbrel was helping some with his symptoms.
10. Plaintiff returned to Dr. Broussard on 1 July 2008, at which time his symptoms had been getting worse. Plaintiff was dropping objects, waking up in the middle of the night and the numbness was becoming more severe. Dr. Broussard determined that he would perform a carpal tunnel release surgery first on the right hand, and then on the left hand.
11. Plaintiff underwent a right carpal tunnel release surgery on 6 August 2008 that was performed by Dr. Broussard. On 1 October 2008, plaintiff underwent left carpal tunnel release surgery that was also performed Dr. Broussard.
12. On 4 December 2008, plaintiff reported to Dr. Broussard that he was doing better, but that he was having a lot of swelling, pain and stiffness. Plaintiff was restarted on Limbrel with the diagnosis of bilateral carpal tunnel syndrome release and bilateral hand osteoarthritis. *Page 7 
13. On 15 January 2009, plaintiff returned to Dr. Broussard at which time he reported that he was not getting any relief from Limbrel. Because plaintiff's arthritis was getting worse, Dr. Broussard prescribed Percocet and referred him to Dr. Karen Schorn, a rheumatologist.
14. Plaintiff was examined by Dr. Schorn on 5 March 2009. Dr. Schorn's medical report was reviewed by Dr. Broussard who noted that she diagnosed plaintiff with an inflammatory arthropathy with overlapping disuse syndrome of his hands. Dr. Broussard noted that Dr. Schorn's diagnostic studies were negative for rheumatoid arthritis, and that therefore he determined that plaintiff had osteoarthritis.
15. On 15 April 2009, plaintiff had an MRI of his right hand, which revealed severe osteoarthritis in his right hand, most notably at the first through third MCP joints.
16. On 27 April 2009, plaintiff underwent an occupational therapy evaluation to determine what he could do in regards to grip strength and range of motion. A new nerve conduction study on 21 May 2009 revealed that plaintiff's nerves had improved following the bilateral carpal tunnel syndrome surgery but that he had mild cubital tunnel and had residual permanent damage.
17. Dr. Broussard assigned plaintiff a ten percent (10%) permanent partial impairment rating to both his right hand and his left hand.
18. Dr. Broussard causally related plaintiff's bilateral carpal tunnel syndrome to his job as a Stage 1 RLT truck tire builder with defendant-employer. Dr. Broussard further testified that plaintiff's job as a Stage 1 RLT truck tire builder with defendant-employer placed him at an increased risk for development of carpal tunnel syndrome as opposed to members of the general public not so employed. Dr. Bhat concurred with the opinions of Dr. Broussard with regard to increased risk and causation. Dr. George S. Edwards, an orthopedic surgeon who performed an *Page 8 
independent medical examination of plaintiff at the request of defendants, reached opposite opinions with regard to increased risk and causation.
19. Dr. Bhat also causally related plaintiff's bilateral hand osteoarthritis to his job as a Stage 1 RLT truck tire builder with defendant-employer. Dr. Bhat further testified that plaintiff's job as a Stage 1 RLT truck tire builder with defendant-employer placed him at an increased risk for developing osteoarthritis in his hands as opposed to members of the general public, not so employed.
20. Dr. Edwards did not find a causal relationship between plaintiff's osteoarthritis and his employment with defendant-employer.
21. Greater weight is given to the opinions of Dr. Broussard as plaintiff's treating orthopaedic surgeon, and to Dr. Bhat as plaintiff's initial treating physician upon referral by defendant-employer, than to Dr. Edwards who examined plaintiff on a single occasion.
22. With regard to disability, Dr. Broussard testified that plaintiff's current restrictions are probably more related to his arthritic hand condition than to his post-surgical carpal tunnel syndrome. However, Dr. Broussard further testified that plaintiff will likely have some "residual permanent damage" from his bilateral carpal tunnel syndrome.
23. There is no medical evidence attributing a percentage of plaintiff's incapacity to use his hands to his arthritic condition and a percentage to his post-surgical carpal tunnel condition. Additionally, it is unclear whether plaintiff has reached maximum medical improvement for either, or both of his hand conditions.
24. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that plaintiff's employment with defendant-employer exposed him to an increased risk of developing carpal tunnel syndrome as opposed to members of the general *Page 9 
public not so employed, and plaintiff's employment with defendant-employer caused or significantly contributed to the development of his bilateral carpal tunnel syndrome.
25. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that plaintiff's employment with defendant-employer exposed him to an increased risk of developing bilateral hand osteoarthritis as opposed to members of the general public not so employed, and plaintiff's employment with defendant-employer caused or significantly contributed to the development of his bilateral hand osteoarthritis.
26. As this is a denied claim, plaintiff has not been provided with vocational rehabilitation to assist him in finding or retraining for suitable employment. Considering plaintiff's high school education, his thirty-two (32) year work history as a tire builder, and his current restrictions on the use of his hands, the Full Commission finds that plaintiff conducting a job search, without the assistance of vocational rehabilitation, would likely be futile.
27. Based upon the preponderance of the evidence in view of the entire record, as well as the credible vocational and medical evidence of record, and as the result of his compensable occupational diseases, bilateral carpal tunnel syndrome and bilateral hand osteoarthritis, the Full Commission finds that due to the restrictions on the use of his hands, plaintiff has been unable to return to work for defendant-employer in his former position as a tire builder or in any other employment for the period of August 6, 2008, the day he went out of work for right carpal tunnel release surgery, through the present and continuing.
28. Since this is defendants' appeal and the Full Commission by its decision herein is ordering defendants to make payments of compensation to plaintiff, the Full Commission finds plaintiff should be awarded attorney fees as a part of the costs, upon a proper showing of the time expended defending this appeal pursuant to N.C. Gen. Stat. § 97-88. *Page 10 
29. Defendants are entitled to a credit for all "net" AS benefits received by the employee for any period of time for which he is claiming entitlement to disability benefits. The parties further stipulate that "net" AS benefits are defined as gross AS benefits less any taxes taken out on said gross benefits.
 ***********
The foregoing findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff's employment with defendant-employer exposed him to an increased risk of developing carpal tunnel syndrome as opposed to members of the general public not so employed, and plaintiff's employment with defendant-employer caused or significantly contributed to the development of plaintiff's bilateral carpal tunnel syndrome. N.C. Gen. Stat. § 97-53(13). Therefore, plaintiff's bilateral carpal tunnel syndrome is compensable. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983).
2. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that plaintiff's employment with defendant-employer exposed him to an increased risk of developing bilateral hand osteoarthritis as opposed to members of the general public not so employed, and plaintiff's employment with defendant-employer caused or significantly contributed to the development of his bilateral hand osteoarthritis. N.C. Gen. Stat. § 97-53(13). Therefore, plaintiff's bilateral hand osteoarthritis is compensable. N.C. Gen. Stat. § 97-53(13);Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000).
3. Where a claimant is rendered totally unable to earn wages, partially as a result of a compensable injury and partially as a result of a non-work-related medical condition, the claimant is entitled to an award for total disability under N.C. Gen. Stat § 97-29. Counts v. Black *Page 11 Decker Corp., 121 N.C.App. 387, 465 S.E.2d 343 (1996).
4. Apportionment of an award of compensation for total disability has been allowed by our courts where only a portion of a claimant's total disability is caused by a compensable injury and a portion is caused by a non-work-related condition, which is neither accelerated nor aggravated by the compensable injury. Id.
5. However, apportionment is not proper where the evidence renders an attempt at apportionment between work-related and non-work-related causes speculative, or where there is no evidence attributing a percentage of the claimant's total incapacity to the compensable injury, and a percentage to the non-compensable condition. Id.
6. There is no evidence of record attributing a percentage of plaintiff's total incapacity to his work-related medical condition, and a percentage to his non-work-related medical condition.Id. Based upon the preponderance of the evidence in view of the entire record, as well as the credible vocational and medical evidence of record, and as the result of his compensable occupational diseases, bilateral carpal tunnel syndrome and bilateral hand osteoarthritis, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $754.00 per week for the period of August 6, 2008, the day he went out of work for right carpal tunnel release surgery, through the present and continuing until such time as he returns to work or further Order of the Commission. N.C. Gen. Stat § 97-29.
7. As a result of his bilateral carpal tunnel syndrome and bilateral osteoarthritis, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including those associated with the treatment provided by Dr. Broussard and Dr. Bhat, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25. *Page 12 
8. Plaintiff is entitled to attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88. Plaintiff's counsel shall submit an affidavit setting forth the time spent defending this matter since defendants' Notice of Appeal to the Full Commission and a requested hourly rate. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney's fee approved below, and the credit owed defendants for all "net" AS benefits received by plaintiff as stipulated by the parties, defendants shall pay temporary total disability compensation to plaintiff at the rate of $754.00 per week for the period of August 6, 2008 through the present and continuing until such time as he returns to work or further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as a result of his bilateral carpal tunnel syndrome and bilateral osteoarthritis, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including those associated with the treatment provided by Dr. Broussard and Dr. Bhat, when the medical bills have been approved according to established Industrial Commission procedures.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the accrued amount due plaintiff and thereafter by deducting every fourth *Page 13 
compensation check due plaintiff.
4. Plaintiff's counsel is hereby awarded attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88. As such, plaintiff's counsel shall submit to the Full Commission an affidavit setting forth the time spent defending this appeal to the Full Commission within thirty (30) days of the filing of this Opinion and Award. Upon review of this affidavit, the Full Commission shall issue an Order awarding the specific amount of attorney's fees to which plaintiff's counsel is entitled.
5. Defendants shall pay the costs due the Commission.
IT IS THEREFORE ORDERED that this matter shall be REMOVED from the hearing docket.
This the ___ day of August, 2011.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________ PAMELA T. YOUNG CHAIR
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1